FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 23, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FLOYD P.,[1] | No. 1:19-cv-03015-MKD |
|         Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR REMAND |
|   vs. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] | |
|         Defendant. | ECF Nos. 17, 21 |

BEFORE THE COURT is the Plaintiff's Motion for Summary Judgment

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

and Defendant's Motion for Remand for further administrative proceedings.  ECF

Nos. 17, 21.  Plaintiff opposes Defendant's Motion for Remand.  ECF No. 22.  The

parties consented to proceed before a magistrate judge.  ECF No. 7.  The Court,

having reviewed the administrative record and the parties' briefing, is fully

informed.  For the reasons discussed below, the Court grants Plaintiff's Motion,

ECF No. 17, and denies Defendant's Motion, ECF No. 21.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work

activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled. 20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity. 20 C.F.R. §

416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits."  *Parra v. Astrue*, 481 F. 3d 742, 746 (9th Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)). When there is medical evidence of drug or alcohol addiction (DAA), the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability.  20 C.F.R. § 416.935(a).  In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of  the remaining limitations would be disabling.  20 C.F.R. § 416.935(b)(2).  If the remaining limitations would not be disabling, drug or alcohol addiction is a

contributing factor material to the determination of disability. *Id.* If the remaining limitations would be disabling, the claimant is disabled independent of the drug or alcohol addiction and the addiction is not a contributing factor material to disability. *Id.* The claimant has the burden of showing that drug and alcohol addiction is not a contributing factor material to disability. *Parra*, 481 F.3d at 748.

## ALJ'S FINDINGS

On March 20, 2013, Plaintiff applied for Title XVI supplemental security income benefits. Tr. 249-58. He alleged an onset date of April 1, 2002, Tr. 250, which was subsequently amended to March 20, 2013. Tr. 85. The application was denied initially, Tr. 140-53, and on reconsideration, Tr. 155-70. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on January 9, 2015. Tr. 82-112. On March 16, 2015, the ALJ denied Plaintiff's claim. Tr. 15-40. The Appeals Council denied review. Tr. 1-6. Plaintiff appealed.

In January 2018, this Court granted Plaintiff's motion for summary judgment and remanded the matter for further administrative proceedings. Tr. 757-94; *Phipps v. Comm'r of Soc. Sec.*, Cause No. 1:16-cv-03210-MKD, 2018 WL 162926 (E.D. Wash. Jan. 19, 2018) (Order, ECF No. 19). On remand, the Court directed the Commissioner to

> perform step three onward, reconsidering the medical opinion evidence of Plaintiff's treating and examining physicians, and further develop the record as necessary. The Commissioner shall consider the RFC, including Plaintiff's physical RFC with and without DAA. The Commissioner shall

ORDER - 7

consider the basis for the decision that Plaintiff's RFC falls within the light work category and if appropriate, address the Grid rules for sedentary work. Tr. 793. The Appeals Council remanded the matter. Tr 795-98. On remand, the ALJ conducted a hearing, receiving testimony from Plaintiff, a medical expert, and a vocational expert. Tr. 691-730. On November 28, 2018, the ALJ denied Plaintiff's claim. Tr. 654-90.

At the outset, the ALJ acknowledged there was a prior unfavorable decision dated April 5, 2010 adjudicating Plaintiff's claim for disability benefits for the period from October 4, 2007 to April 5, 2010. Tr. 658-59 (citing Tr. 113-30). The ALJ determined the presumption of ongoing non-disability did not apply under Acquiescence Ruling 97-4(9) (adopting *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988)). Tr. 658-59. The ALJ found it was not appropriate to adopt all the findings from the 2010 decision due to a number of changed circumstances,[3] including Plaintiff's additional severe impairments (such as right knee osteoarthritis and obesity), the change in Plaintiff's age category to "closely approaching advanced age" after reaching age 50 during the adjudicatory period, additional treatment records, and a change in the mental Listings. Tr. 658-59.

---

[3] In order to show "changed circumstances," the evidence must indicate a "greater disability" since the prior decision denying benefits. *Chavez*, 844 F.2d at 693.

ORDER - 8

The ALJ also denied Plaintiff's post-hearing requests for closed period of disability from February 13, 2013 through April 30, 2018 and for a consultative examination.  Tr 659.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 20, 2013.  Tr. 662.  At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease, carpal tunnel syndrome, right knee osteoarthritis, diabetes mellitus, obesity, major depressive disorder, and substance abuse.[4]  Tr. 662, 673.  At step three, the ALJ found that Plaintiff's impairments, including substance use disorders, meet Listing 12.04 (affective disorder) of 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 663.  However, the ALJ found that, if Plaintiff stopped the substance use, Plaintiff's impairments would remain severe, but he would not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  Tr. 673.  The ALJ then found that prior to November 1, 2017, Plaintiff would have the RFC to perform light work with the following limitations:

---

[4] It is noted that in March 2015, the ALJ therein determined at step two that Plaintiff also suffered from methamphetamine dependence, cannabis dependence, schizotypal disorder, anxiety, and post-traumatic stress disorder.  Tr. 21.

he could stand and walk [two] hours total in an [eight] hour workday; could occasionally climb ramps and stairs; should not climb ladders, ropes, and scaffolds; could occasionally stoop, kneel, crouch and crawl; could frequently handle and finger bilaterally; should avoid concentrated exposure to vibration and hazards (such as unprotected heights and exposed machinery); could understand and remember simple instructions; had sufficient concentration, persistence, and pace to complete simple, routine, and repetitive tasks; should have only occasional[] contact with the general public; and could adapt to simple changes to the work environment.

Tr. 675.[5]

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 679. At step five, the ALJ determined that prior to November 1, 2017, if Plaintiff stopped the substance use, there would be jobs that existed in significant numbers in the national economy that Plaintiff could perform including production assembler,[6] mail clerk, and hand packager. Tr. 680. The ALJ then concluded that because

_____

[5] This RFC differed from prior RFC determinations. In March 2015, the RFC included limitations to never crouch, kneel or crawl, low-stress work (requiring few decisions and few changes), only occasional, superficial contact with co-workers, and no public contact. Tr. 24. The April 2010 RFC limited Plaintiff to the less than the full range of sedentary work and concluded Plaintiff "must work away from the general public." Tr. 120.

[6] Production assembler was the same job identified by the vocational expert in the prior hearing which the Court's remand order discussed. Tr. 790-91.

ORDER - 10

substance abuse is a material contributing factor to the determination of disability, Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the date of application through October 31, 2017. Tr. 681.

As of November 1, 2017, the ALJ found Plaintiff's RFC was further reduced to only occasionally handling and fingering with the dominant right upper extremity. Tr. 681. The ALJ determined that Plaintiff was disabled from November 1, 2017 through the date of the ALJ's decision. Tr. 683.

Per 20 C.F.R. § 416.1484, the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him Supplemental Security Income benefits under Title XVI of the Social Security Act prior to November 1, 2017. ECF No. 17. Plaintiff raises the following issues for review:

1. Whether there ALJ properly assessed step five;

2. Whether the ALJ properly assessed Plaintiff's RFC in the absence of DAA prior to November 1, 2017;

3. Whether the ALJ properly concluded DAA was material to the determination of disability prior to November 1, 2017;

4. Whether the ALJ properly weighed the medical opinion evidence;

and

5.   Whether the ALJ properly weighed Plaintiff's symptom testimony. *See* ECF No. 17.

**DISCUSSION**

**A. Step Five**

The Court begins by discussing step five because it is conceded remand is warranted based on the ALJ's errors at this step.  "[I]f a claimant establishes an inability to continue [his] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (*citing Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  At step five, "the ALJ ... examines whether the claimant has the [RFC] ... to perform any other substantial gainful activity in the national economy." *Id*.  "If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do." *Tackett*, 180 F.3d at 1099.  "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a [VE], or (2) by reference to the Medical-Vocational Guidelines...." *Id*.  "If the Commissioner meets this burden, the claimant is not disabled and therefore not entitled to ... benefits." *Id*. (citation omitted).  "If the

Commissioner cannot meet this burden, then the claimant is disabled and therefore entitled to ... benefits." *Id.* (citation omitted).

Plaintiff contends the ALJ erred at step five in three primary ways. First, he claims the ALJ erred by failing to find Plaintiff disabled under the Medical-Vocational Guidelines (the Grids or Grid Rules) for sedentary work. ECF No. 17 at 4-6. Plaintiff claims a proper application of the case law and Social Security Rulings would have dictated a finding of disabled under Grid Rule 201.12 as of the date Plaintiff turned 50 years old. ECF No. 17 at 4-6. Second, Plaintiff contends the vocational expert's testimony presented an actual conflict with the Dictionary of Occupational Titles (DOT), as each of the light exertion jobs he identified are defined in the DOT as requiring the ability to stand and walk for up to six hours, and the ALJ failed to make inquiry of the expert in order to resolve the conflict. ECF No. 17 at 7. Third, Plaintiff contends the job incidence numbers identified by the vocational expert were vastly over-estimated and the jobs identified are not available in significant numbers according to Job Browser Pro data obtained by Plaintiff. ECF No. 17 at 7, Ex A.

### 1. *DOT Conflict and Conceded Error*

Defendant's Motion for Remand accepts Plaintiff's contention that the ALJ's decision is not supported by substantial evidence but concedes only Plaintiff's second assertion of error at step five. ECF No. 21 at 4. Specifically,

Defendant concedes the vocational expert identified jobs which according to the

DOT, exceed the standing and walking limitations included in Plaintiff's RFC.

ECF No. 21 at 5. Defendant agrees the vocational expert's testimony conflicted

with the DOT and as such, the ALJ had an affirmative duty to inquire as to the

conflict and find "persuasive evidence" to deviate from the DOT but did not do so.

ECF No. 21 at 5. Furthermore, Defendant also concedes that this is the second

time *the same* error has occurred, despite the fact that on remand, the ALJ had the

benefit of this Court's remand order discussing this issue at length. ECF No. 21 at

5; *see* Tr. 790 ("The vocational expert's testimony was not in accord with the

[DOT]. . . . The ALJ did not ask the vocational expert how the standing/walking

limitation impacted or eroded the number of available positions."). Defendant's

Motion notes, this Court's prior remand order acknowledged that in the previous

administrative hearing in 2015, the vocational expert had testified there were "*no*

*jobs*" a person limited to less than light work with only two hours of standing or

walking could perform. ECF No. 21 at 5 (citing Tr. 790 -91 (quoting Tr. 110))

(emphasis added). Despite this step five evidence clearly weighing in Plaintiff's

favor, the Court exercised its discretion and remanded for further proceedings to

allow the Commissioner another opportunity to properly analyze the medical

opinion evidence and develop a clear record at step five. Tr. 791. The Court's

remand order emphasized:

ORDER - 14

It is not clear form the record whether the vocational expert understood the hypothetical and the nature of Plaintiff's exertional capacity with its limitations to less than two hours of standing or walking. As a result, it is also unclear whether the ALJ considered the extent of the erosion of the occupational base. . . . The accuracy of the vocational expert testimony is *essential* to the sequential evaluation when a claimant's RFC falls between light and sedentary work.

Tr. 791. Although the ALJ reviewed this Court's order and rendered a similar RFC finding, Defendant concedes the ALJ again did not obtain adequate vocational evidence to support the ALJ's step five finding.

## 2. *Defendant's Response Re: Other Alleged Errors*

Given Defendant's concession of error at step five, the only issue before the Court is whether this matter should be reversed and remanded for further proceedings or for an award of benefits. This question is a matter for the Court's discretion, which is informed by the nature of the consequences flowing from the ALJ's errors. Defendant's Motion concedes only one of the alleged step five errors and only discusses one of the other alleged errors identified in Plaintiff's Motion for Summary Judgment. ECF No. 21 at 7-10 (claiming the ALJ's analysis of the RFC based on the current record was "sound" under *Chavez*). Defendant's only response to Plaintiff's contention that the ALJ improperly analyzed the Grids and that a remand for benefits as of Plaintiff's fiftieth birthday is warranted under the Grids is the general comment that "a disability finding at this time would not be supported by substantial evidence" and would be "hasty." ECF No. 21 at 10.

Defendant seeks to impose an analytical restriction that is impractical given the delay impacting Plaintiff in this case and that successive, piecemeal litigation is to be avoided. *Murrell v. Shalala*, 43 F.3d 1388, 1389 (10th Cir. 1994) (thorough resolution of social security case *once* and use of alternative dispositions, benefits the courts by avoiding piecemeal appeals and benefits the litigants by sparing them "the protracted delays that result when a case drags on incrementally, bouncing back-and-forth between administrative (re)determinations and judicial review thereof."). The Court must consider whether there are issues remaining to be resolved on remand and a remand for the limited purpose as requested by Defendant could leave unresolved questions properly raised by Plaintiff in this appeal of the Commissioner's adverse decision. As noted recently by one district court, Defendant's lack of response to the other assertions of error also carries the risk of potential adverse inferences based on non-opposition:

> A contrary finding would force Plaintiff to relitigate the same issues if he appeals the ALJ's next decision when he has already spent the time and resources on those issues in this appeal. Parties do not have the luxury of picking and choosing which arguments they want to address now, and which they prefer to save for later. It is the Commissioner's burden to defend its decision below and failing to address the merits of Plaintiff's arguments does not mean that those decisions can be contested in the future.

*Johnny T. v. Berryhill*, No. 6:18-cv-00829-AA, 2019 WL 2866841, *2 (D. Or. July 2, 2019) (holding Defendant's failure to respond constituted a concession of the issues) (citing cases). Numerous decisions support the review of alternate issues

that are potentially outcome determinative which are beyond the scope of the Commissioner's concession. *See Baird v. Astrue*, No. 09-cv-5764, 2011 WL 529045, *2 (N.D. Ill. Feb. 3, 2011) (denying motion to remand because "from the standpoint of judicial economy, it would make more sense to consider all of the issues raised before deciding whether remand is appropriate," and because "plaintiff was "entitled to judicial review of the entirety of the ALJ's decision, not just those aspects the Commissioner chooses to emphasize."); *De Block v. Colvin*, No. 3:13-cv-1366 (LEK/ATB), 2015 WL 1178478 (N.D. NY, Feb. 10, 2015) (ruling on Plaintiff's other arguments in addition to the conceded claim in response to Plaintiff's request the case "not be short-circuited."); *Hernandez-Inigo v. Berryhill*, No. CV-16-00518-TUC-JSA-LCK, 2017 WL 4179850, *2 (D. Ariz. Aug. 4, 2017) (awarding benefits on one of the additional non-conceded claims and not addressing Plaintiff's four other arguments); *Evilsizor v. Berryhill*, 2017 WL 1401339 (W.D. Wisc. Apr. 19, 2017) (relaying sympathy to the goal of avoiding a future remand given Commissioner's failure to address other issues raised in appeal); *Caincross v. Colvin*, No. 1:15-cv—01637-JMS-MPB, 2016 WL 3882024, *3 (S.D. Ind. July 15, 2016) (addressing other issues raised by Plaintiff "to determine whether they should be considered on remand as well").

Here, Plaintiff contends a remand for an immediate award of benefits is proper because the ALJ erred by failing to apply the sedentary Medical-

Vocational Guidelines ("the Grids") at step five, and that such error was harmful because during the relevant period Plaintiff turned 50 such that applying the sedentary grid would result in a finding of "disabled." ECF No. 17 at 3-5. As this claim impacts the Court's consideration of whether further proceedings are warranted, the Court reviews this related step-five contention.

### 3. The Grids

#### a. ALJ's Duties Re: the RFC, the Grids, and SSR 83-12

The ALJ must craft an RFC before findings at steps four and five. RFC limitations can be either exertional or nonexertional.[7] The Social Security regulations divide the types of available occupations into categories based on their exertional requirements: "sedentary, light, medium, heavy or very heavy." SSR 83-

_____

[7] An exertional limitation is an impairment that affects a claimant's ability to meet work strength demands, such as sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. § 416.969a. A non-exertional limitation is an impairment that affects a claimant's ability to work "without directly affecting his or her strength," such as mental, postural, manipulative, sensory, or environmental limitations. *Desrosiers v. Sec'y Health and Human Servs.*, 846 F.2d 573, 579 (9th Cir. 1988) (Pregerson, J., concurring); *see also Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.7 (9th Cir. 1988)

10, 1983 WL 31251, at *2 (Jan. 1, 1983). Each of these functional levels is defined by the extent of its requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id*.

The ALJ employs the RFC at step five to perform the Grids analysis. The Grids are published tables and administrative rules that can be used in certain cases to "direct[] a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, Subpt. P, app. 2 § 200.00(a). The Grids aid the ALJ in the analysis by presenting "a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114–15 (9th Cir. 2006) (citing *Tackett*, 180 F.3d at 1101). The Grids include three separate tables representing the maximum sustained exertional work capacity in each category of sedentary, light, and medium work. *Id*. A claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability. *Id*. "For each combination of these factors, [the Grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id*.

An ALJ may apply the Grids in lieu of taking the testimony of a vocational expert " 'only when the grids accurately and completely describe the claimant's abilities and limitations.' " *Tackett*, 180 F.3d at 1102 (quoting *Jones v. Heckler*,

760 F.2d 993, 998 (9th Cir. 1985)); *see* 20 C.F.R. pt. 404, Subpt. P, app. 2 §

200.00(d) ("If an individual's specific profile is not listed within [the Grids], a

conclusion of disabled or not disabled is not directed.").  Therefore, where a

claimant's physical ability "falls between the ranges of work indicated in the rules

(e.g., the individual can perform more than light but less than medium)," the Grids

only "provide guidance for decisionmaking."  20 C.F.R. pt. 404, supbt. P, app. 2, §

200.00(d).  Further, "[i]In cases where the claimant suffers from both exertional

and nonexertional impairments," the Grids "are considered in determining first

whether a finding of disabled may be possible based on the strength limitations

alone."  20 C.F. R. pt. 404, supbt. P, app. 2, § 200.00(d); *Cooper v. Sullivan*, 880

F.2d 1152, 1555-56 (9th Cir. 1989).  If this is not possible, then the ALJ must use

the Grids "only as a framework" for decision-making and a "[vocational expert]

must be consulted."  *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000), *Tackett*,

180 F.3d at 1102; *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988);

*Cooper*, 880 F.2d at 1155–56. "The [G]rids are inapplicable when a claimant's

non-exertional limitations are sufficiently severe so as to significantly limit the

range of work permitted by the claimant's exertional limitations." *Hoopai v.

Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (internal quotation marks and citation

omitted).

In cases where the Plaintiff's RFC falls between the exertional demands of light and sedentary work, and the distinction is outcome determinative, then SSR 83-12 clarifies how ALJ's must use the Grids as a "framework." *See* 1983 WL 31253, at *1, *2. When "an individual's exertional RFC does not coincide with the definition of any one of the ranges of work . . . the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability." *Id*. at *2. Thus, the ALJ "will consider the extent of any erosion of the occupational base and assess its significance" in resolving the person's claim. *Id*. (spelling corrected). The "Policy Statement" in SSR 83-12 states:

> In some instances, the restriction will be so slight that it would clearly have little effect on the occupational base. In case of considerably greater restriction(s), the occupational base will obviously be affected. In still other instances, the restrictions of the occupational base will be less obvious. Where the extent of the erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource.

SSR 83-12, 1983 WL 31253, *2. Relevantly, SSR 83-12 provides the following additional "Adjudicative Guidance":

> 2. If the exertional level falls between two rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:
> a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
> b. On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the

ORDER - 21

occupational base for the lower rule and could justify a finding of "Disabled."

c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [vocational expert] assistance is advisable for these types of cases.

1983 WL 31253 at * 2–3.

### b. Discussion

Here, the ALJ found that prior to November 1, 2017, Plaintiff retained the RFC to perform light work, with the exception that he was limited to just two hours of standing and walking in an eight-hour workday.[8] Tr. 675. Given this

---

[8] One of the primary differences between the definitions of light and sedentary work is the extent of standing and walking. According to the Social Security Administration, the physical exertion requirements of light work:

> involve[ ] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.... [A] job is in this category when it requires *a good deal of walking or standing*, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 416.967(b) (emphasis added). SSR 83–10 further explains that the full range of light work "requires standing or walking, off and on, for a total of

limitation, the ALJ found that Plaintiff's exertional capacity did not meet the "full range of light work." Tr. 680. The ALJ also found a number of nonexertional limitations including that Plaintiff (1) could frequently handle and finger bilaterally; (2) could occasionally climb ramps and stars; (3) should not climb ladders, ropes and scaffolds; (4) could occasionally stoop, kneel, crouch, and crawl; (5) should avoid concentrated exposure to vibration and to hazards; (6) could understand and remember simple instructions; (7) could complete simple routine, and repetitive tasks; (8) could have occasional contact with the general public; and (9) could adapt to simple changes to the work environment. Tr. 675.

The ALJ concluded that the two-hour standing/walking limitation placed Plaintiff's exertional RFC between the light and sedentary classifications. Tr. 681.

--------------------

approximately 6 hours of an 8–hour workday." SSR 83–10, 1983 WL 31251, at *6. By contrast, the lower category of sedentary work is defined as

> [L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). It is not necessary that every claimant's RFC fit one of these exact descriptions.

The ALJ found Plaintiff capable of all of the exertional requirements of light work (including lifting, carrying, sitting, pushing and pulling) except the standing and walking requirement, which was consistent with sedentary work. As Plaintiff's RFC did not coincide completely with the definition of any one of the ranges of work, the ALJ found that when Plaintiff turned age 50, this placed Plaintiff's situation between two Grid rules directing opposite conclusions with regard to disability. Tr. 680-81; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.12 (sedentary work, disabled) and 202.13 (light work, not disabled).

Citing SSR 83-12 and 83-14, Plaintiff contends the combination of his limitations "put this RFC at the sedentary level." ECF No. 22 at 4. However, this is not what the Social Security Rulings state. First, the relevant language of SSR 83-12 does not mandate any finding; it merely advises that a "significantly reduced exertional capacity *could* indicate little more than the occupational base for the lower rule and *could* justify a finding of Disabled." 1983 WL 31253 at * 2–3 (emphasis added). The language appears to mean that such a finding is discretionary, not a mandatory as Plaintiff asserts. *See Lopez v. Colvin*, No. 15-00976, 2016 WL 429783, at *3 (C.D. Cal. Feb. 3, 2016) ("[t]his language is not a mandate, but a reminder to the ALJ to consider whether a limitation is so significant that the person should be classified at the lower level of exertion.").

Second, Plaintiff's argument assumes that the erosion of the occupational base was "clear" and constitutes a "significantly reduced exertional capacity," such that vocational expert assistance was not even necessary. *See* SSR 83-14. Here, in consideration of this issue, the ALJ clearly believed a more difficult judgment was involved thus necessitating a vocational resource, because of the additional limits on standing and walking and his finding that "the limitations regarding hazards and postural activities would not cause significant erosion of the light occupational base." Tr. 680. Indeed, courts within the Ninth Circuit disagree as to whether a plaintiff's ability to stand or walk for up to two hours significantly reduces the base of light work, such that the RFC requires a finding of sedentary work. *Compare Merritt v. Colvin*, No. 3:14-cv-05964-KLS, 2015 WL 4039355 (W.D. Wash. July 2, 2015) (concluding "that capacity clearly is sufficiently significantly reduced below that of the light exertional level to indicate the sedentary exertional level is the most appropriate one to use here"); *McClure v. Comm'r of Soc. Sec.*, No. 15cv1312-LAB-RBB, 2016 WL 4628049, *7 (S.D. Cal. Aug. 9, 2016) (concluding ALJ's RFC was not supported where the two-hour stand/walk limitation was "closer to sedentary work than light work" and thus did *not* fall "somewhere in the middle."); *with Brenneman v. Berryhill*, No. C16-5740-RSM, 2017 WL 2298510, at *6 (W.D. Wash. May 26, 2017) ("[T]he regulations do not provide that a two-hour limitation on standing and walking requires a sedentary classification");

*Lopez*, No. 15-00976, 2016 WL 429783, at *3. Where Plaintiff's exertional

capacity met some of both light and sedentary exertional requirements, it was not

only reasonable, but "advisable" for the ALJ to utilize his discretion to elicit

testimony from the vocational expert. SSR 83-12, 1983 WL 31253, at *2-*3;

*Moore*, 216 F.3d at 869 ("Where the grids do not completely describe the

claimant's abilities and limitations ... the grids are inapplicable and the ALJ must

take the testimony of a VE."). As such, the ALJ did not err by enlisting the

assistance of a vocational expert; the Court rejects Plaintiff's argument that

enlisting a vocational expert in this context was "impermissible." ECF No. 22 at 5.

Plaintiff cites *Merritt v. Colvin*, wherein a court in the Western District of

Washington held the ALJ should have consulted the sedentary Grid rule in the face

of a two-hour limitation in the ability to stand and walk. ECF No. 17 at 5 (citing

2015 WL 4039355 (W.D. Wash. July 2, 2015)). However, *Merritt* is not binding

on this Court. Notably, the claimant in *Merritt* also involved a different RFC

which included the additional exertional limitation of alternating between standing

and sitting at will, which is not present in the instant case. *Merritt*, 2015 WL

4039355, *2. Here, Plaintiff does not claim that his exertional limitations alone

foreclose light work or that a two-hour limitation on standing and walking requires

a sedentary classification. ECF No. 22 at 3 (asserting Plaintiff's exertional and

nonexertional limitations exclude light work). Social Security cases are

necessarily very fact specific. Given the range of possible outcomes the facts and law could possibly support as evidenced in the caselaw, the Court cannot simply apply the reasoning in *Merritt* here.

The ALJ erred in failing to elicit reliable vocational expert testimony in order to evaluate the erosion of the occupational base to determine the guidance value of Grid Rule 201.12. This contravened the Court's remand order:

> It is not clear from the record whether the vocational expert understood the hypothetical and the nature of Plaintiff's exertional capacity with its limitations to less than two hours of standing or walking. As a result, it is also unclear whether the ALJ considered the extent of erosion of the occupational base.

Tr. 787-91. There is no question the ALJ understood the scope of the Court's remand order, as the ALJ's decision reiterates that the purpose of the remand was for "discussion of which grid rule should apply" and "clarification of vocational expert testimony." Tr. 658.

The question for this Court is whether implementation of the same remedy, i.e. a remand for clarification of the use of the Grids and vocational evidence, is appropriate where the Commissioner has twice failed to meet his burden at step five of the sequential analysis.

**B. RFC**

Plaintiff also asserts the ALJ made a number of errors prior to step five in assessing his RFC. These alleged errors include: 1) the failure to properly consider

the 2010 RFC determination limiting Plaintiff to "less than the full range of sedentary work"; 2) the failure to find DAA immaterial to Plaintiff's disabling physical impairments; 3) the failure, for the second time, to properly assess the medical opinions of Plaintiff's treating physician Troy Witherrite, M.D., who provided three opinions (Tr. 382-84, 576-77, 638-40) opining Plaintiff was limited to sedentary work; 4) the failure to properly assess the medical opinions of Kevin Yuen, M.D., Daniel McCabe, M.D., and R. Hoskins, M.D.; and 5) the failure to provide adequate reasons to find Plaintiff credible only after November 1, 2017. ECF No. 17 at 7-21; ECF No. 22 at 2. As noted above, Defendant substantively addresses the merit of the issue pertaining to consideration of the 2010 RFC, but not any of other RFC-related arguments. ECF No. 21 at 4. If proven, these assignments of error may have called for application of the "credit as true" rule as described in *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017); but as explained below, the Court agrees with Plaintiff, "the issue is now simplified," ECF No. 22 at 5, and the additional uncontested issues need not be decided by the Court.

## C. Remand

The final question requiring resolution is whether the Court should, at its discretion, remand this case for further proceedings or for an award of benefits, where the Commissioner has twice failed to meet his burden of proof at step five of

the sequential analysis.  Defendant contends a remand for further proceedings is appropriate to obtain "supplementary vocational expert testimony" and to "instruct[] [the ALJ] to comply with the prior court remand."  ECF No. 21 at 4. Plaintiff opposes the limited basis upon which Defendant seeks remand and contends that the ALJ's decision should be reversed and remanded for the award of benefits once Plaintiff turned age 50.  ECF No. 22.

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met).  This policy is based on the "need to expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke v.*

*Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Here, no additional proceedings are necessary. This application for benefits has been pending for nearly seven years. It has resulted in two complete hearings with expert testimony, review by two separate ALJs, review by the Appeals Council on two occasions, and now two opinions of this Court. The record exceeds 1200 pages. Plaintiff is now 55 years old, has no past relevant work, has never engaged in substantial gainful activity, and was found disabled as of November 1, 2017. As to the period prior to November 1, 2017 and without consideration of substance use, it is undisputed that Plaintiff met his prima facie case by meeting his burden at steps one through four of the sequential analysis. It is further undisputed, as found by the ALJ, that as of Plaintiff's fiftieth birthday, "the applicable sedentary grid rule was 201.12 which leads to a conclusion of 'disabled.' " Tr. 681. Despite the fact in Plaintiff's initial hearing the vocational expert had testified there were "no jobs" available to Plaintiff with the limitation to two hours of standing or walking, Tr. 110, this Court nevertheless exercised its discretion to remand for further proceedings. Now, despite the guidance of the Appeals Council and this Court, the Commissioner has twice failed to meet his burden at step five. "If the Commissioner cannot meet this burden, then the claimant is 'disabled' and therefore entitled to benefits." *Tackett*, 180 F.3d at

1099. No further proceedings are necessary because given the evidence existing of

record, it appears probable, if not virtually certain, Plaintiff will be deemed

disabled as of age 50 under the guidance of the sedentary Grid Rule, 201.12.

This is not a "hasty" decision, as Defendant characterizes, ECF No. 21 at 10,

because for years Plaintiff has been stuck in a cycle of ALJ errors. In *Benecke*, the

Ninth Circuit emphasized that "[a]llowing the Commissioner to decide the issue

again would create an unfair 'heads we win; tails, let's play again' system of

disability benefits adjudication," and unfairly "delay much needed income for

claimants who are unable to work and are entitled to benefits." 379 F.3d at 595.

The caselaw in this circuit and elsewhere does not support remanding this case to

instruct the ALJ to comply with the Court's last remand order and give the

Defendant a third opportunity to meet his burden. *See Smith v. Colvin*, 554 Fed.

App'x 568, 569 (9th Cir. 2015) (remanding for benefits where "the Commissioner

did not meet her burden at step five of demonstrating that substantial gainful work

exists in the national economy"); *Glass v. Barnhart*, 163 Fed. App'x 470, 473 (9th

Cir. 2006) (remanding for an award of benefits where "the Commissioner did not

produce evidence that [claimant] could perform a significant number of jobs in the

national economy"); *Rustamova v. Colvin*, 111 F. Supp. 3d 1156, 1163 (D. Or.

2015) (holding that application of the credit-as-true rule was not required to

remand for award of benefits when the record was complete, further vocational

expert testimony regarding employment in significant numbers would serve no useful purpose, there was no conflicting medical evidence, and the Commissioner had twice failed to meet their burden at step five of the sequential analysis). *See, e.g.*, *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 746 (10th Cir.1993) (after noting that the claimant's benefits claim had been adjudicated by the Commissioner twice at all levels over a four-year period and finding that substantial evidence did not support the finding that the claimant was not disabled, reversing and remanding for an award of benefits, opining: "The Secretary is not entitled to adjudicate a case 'ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion.' " (citation omitted)); *Jones v. Astrue*, 650 F.3d 772, 777 (D.C. Cir. 2011) ("[W]hen a claimant makes out his prima facie case and the agency fails to carry its burden of showing the claimant could perform 'other work,' the district court may remand the case to the Commissioner with instructions to award the claimant benefits."); *Talbot v. Heckler*, 814 F.2d 1456, 1466 (10th Cir. 1987) ("Where the burden is on the Secretary at step five of the disability process to produce evidence that the claimant can perform other work, and the Secretary does not meet that burden, reversal is appropriate."); *Cahill v. Colvin*, 2014 WL 7392895, at *13 (S.D.N.Y. Dec. 29, 2014) ("The Second Circuit has consistently emphasized the importance of the Commissioner's burden to support her step-five determination with

substantial evidence, and has held that a direct reversal with a remand only to calculate damages is warranted when the ALJ has failed to meet that burden."); *Clester v. Apfel*, 70 F. Supp. 2d 985, 993 (S.D. Iowa 1999) (holding that Commissioner failed to carry its burden at step five by not establishing work in significant numbers that plaintiff could perform, and "remand to take additional evidence would only delay the receipt of benefits to which [p]laintiff is clearly entitled"); *Field v. Chater*, 920 F. Supp. 240, 243 (D. Me. 1995) (stating "[w]hen the Commissioner had a full and fair opportunity to develop the record and meet her burden at Step [five], there is no reason for the court to remand for further factfinding."); *Davis v. Barnhart*, 377 F. Supp. 2d 1160, 1164 (N.D. Ala. 2005) (holding that the Commissioner failed to carry her burden at step five when the ALJ relied on VE testimony not supported by substantial evidence and thus, the claimant was disabled and entitled to benefits); *Brown v. Bowen*, 682 F. Supp. 858, 862 (W.D. Va. 1988) (rejecting argument that the court should give the Administration a third opportunity correctly to resolve a particular issue in the disability analysis).

As the Commissioner did not produce evidence that Plaintiff could perform work that exists in significant numbers in the national economy and the conceded error of the Commissioner, a second remand will serve no useful purpose. Remand for an award of benefits as of Plaintiff's fiftieth birthday is appropriate.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. **IT IS ORDERED:**

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED.**

3. Defendant's Motion for Remand, **ECF No. 21**, is **DENIED**.

4. The District Court Executive is directed to file this Order, enter **JUDGMENT FOR PLAINTIFF**, **REVERSING** and **REMANDING** the matter to the Commissioner of Social Security for immediate calculation and award of benefits as of Plaintiff's fiftieth birthday.

The District Court Executive is further directed to enter this Order, provide copies to counsel, and **CLOSE** the file subject to re-opening for a properly presented application for attorney fees.

DATED this March 23, 2020.

<i>s/Mary K. Dimke</i><br>
MARY K. DIMKE<br>
UNITED STATES MAGISTRATE JUDGE